UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


PHILLIP C. GROSS,

                    Petitioner,

v.                                      Case No. 3:06-cv-471-J-34TEM

WALTER A. MCNEIL,
et al.,

                    Respondents.
_____


## ORDER

### I. Status

Petitioner Phillip C. Gross, who is proceeding pro se,
initiated this action by filing a Petition for Writ of Habeas
Corpus (Petition) (Doc. #1) pursuant to 28 U.S.C. § 2254 on May 19,
2006, pursuant to the mailbox rule. Petitioner Gross claims that
the Florida Parole Commission (FPC) used post-1981 parole laws and
rules to establish his presumptive parole release date (PPRD) in
violation of the Ex Post Facto Clause. Petition at 6.

Respondents filed memoranda in opposition to the Petition.
See FPC's Response to Petition for Writ of Habeas Corpus (Response)
(Doc. #4)[1]; Secretary McDonough's Limited Response to Order to Show
Cause (Doc. #6). On June 8, 2006, the Court entered an Order to

_____

[1] The Court will refer to Respondent's exhibits as "Resp. Ex"
and his Supplemental exhibits as "Resp. Supp. Ex."

Show Cause and Notice to Petitioner (Doc. #3), admonishing Petitioner regarding his obligations and giving Petitioner a time frame in which to submit a reply. Petitioner filed Petitioner's Reply to Respondent's Response to Petition for Writ of Habeas Corpus (Reply) (Doc. #10) and Motion to Supplement Pleadings with New Exhibits (Doc. #12).[2]

On August 26, 2008, and September 22, 2008, in accordance with this Court's July 16, 2008, Order, see Court's Order (Doc. #18), the parties filed supplemental briefs, see FPC's Response to Court's Order (Supp. Response) (Doc. #19); Petitioner's Reply to FPC's Response to Court's Order (Supp. Reply) (Doc. #21). On June 16, 2009, in light of Petitioner's clarification of his ex post facto claim, this Court ordered the parties to file additional supplemental briefs. See Court's Order (Doc. #22). Thus, the FPC filed a Second Supplemental Response (2nd Supp. Response) (Doc. #23), and Petitioner filed a Reply to FPC's Second Supplemental Response (2nd Supp. Reply) (Doc. #28). Finally, in response to this Court's Order (Doc. #29), the parties filed the following: Department of Corrections' Limited Response to Order (Doc. #30); FPC's Third Supplemental Response (3rd Supp. Response) (Doc. #31); Petitioner's Motion for Leave to File Supplemental Exhibit (Doc. #32); and Petitioner's Second Supplemental Reply to FPC's Third

_____

[2] The Court will refer to Petitioner's exhibits as "Pet. Ex."

Supplemental Response (3rd Supp. Reply) (Doc. #33). This case is ripe for review.

## II. Procedural History

Petitioner's criminal history began in 1972. Resp. Ex. A. On December 16, 1981, Petitioner was convicted of first degree murder in Pinellas County, Florida (Case No. 81-289) and sentenced to a term of life imprisonment with a twenty-five year mandatory minimum term before being eligible for parole. Resp. Ex. B. On January 7, 1982, Petitioner was convicted of escape in Pinellas County (Case No. 81-528) and was sentenced to fifteen years of incarceration, to run consecutively to the life sentence. Resp. Ex. C. After an August 26, 2004, initial interview, the Florida parole examiner recommended a June 29, 2023, PPRD (which included the consecutive fifteen-year sentence for the escape in Case No. 81-528). Resp. Ex. D. On October 8, 2004, following a September 29, 2004, parole commission meeting, the FPC established Petitioner's PPRD to be January 15, 2086. Resp. Ex. E.

On November 2, 2004, Petitioner requested administrative review of the FPC's determination of his PPRD. See Resp. Ex. F. After review, on December 14, 2004, the FPC "found that the issues raised in [Petitioner's] administrative review request do not merit modification" of Petitioner's established PPRD. Resp. Ex. G.

Pursuant to the mailbox rule, on January 12, 2005, Petitioner filed a Petition for Writ of Mandamus in the Circuit Court of the

Second Judicial Circuit in and for Leon County, Florida, seeking to have the court vacate his PPRD and order the FPC to recalculate and establish a new PPRD.  <u>See</u> Resp. Ex. H.  On July 26, 2005, the court concluded "that Petitioner's claims regarding the ex post facto application of parole statu[t]es provide no basis for relief."  Resp. Ex. I at 2.  Undeterred, on August 22, 2005, pursuant to the mailbox rule, Petitioner filed a Petition for Writ of Certiorari in the First District Court of Appeal, <u>see</u> Resp. Ex. J, and the FPC filed a response, <u>see</u> Resp. Ex. K.  On March 8, 2006, the First District Court of Appeal denied the petition <u>per curiam</u>, without issuing a written opinion.  <u>See</u> Resp. Ex. L.  The instant Petition followed.

### III. One-Year Limitations Period

The Petition is timely filed within the one-year period of limitations.  <u>See</u> 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." <u>Schriro v. Landrigan</u>, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  <u>Id</u>.  The

4

pertinent facts of this case are fully developed in the record
before the Court. Because this Court can "adequately assess
[Petitioner's] claim without further factual development," <u>Turner
v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert</u>. <u>denied</u>, 541
U.S. 1034 (2004), an evidentiary hearing will not be conducted by
this Court.

## V. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of
1996, Pub.L. 104-132, 110 Stat. 1214 (AEDPA), this Court's review
of state court decisions "is 'greatly circumscribed and highly
deferential to the state courts.' <u>Crawford v. Head</u>, 311 F.3d 1288,
1295 (11th Cir. 2002)." <u>Stewart v. Sec'y, Dep't of Corr.</u>, 476 F.3d
1193, 1208 (11th Cir. 2007).

> [Section] 2254(d) allows federal habeas relief
> for a claim adjudicated on the merits in state
> court only if the state court adjudication[3]
> resulted in a decision that was: "(1) . . .
> contrary to, or involved an unreasonable[4]
> application of, clearly established Federal

---

[3] For a state court's resolution of a claim to be an
adjudication on the merits, so that the state court's determination
will be entitled to deference for purposes of federal habeas corpus
review under AEDPA, all that is required is a rejection of the
claim on the merits, not an opinion that explains the state court's
rationale for such a ruling. <u>Wright v. Sec'y for the Dep't of
Corr.</u>, 278 F.3d 1245, 1255 (11th Cir. 2002), <u>cert</u>. <u>denied</u>, 538 U.S.
906 (2003).

[4] "The question under AEDPA is not whether a federal court
believes the state court's determination was incorrect but whether
that determination was unreasonable – a substantially higher
threshold." <u>Schriro</u>, 550 U.S. at 473 (citing <u>Williams v. Taylor</u>,
529 U.S. 362, 410 (2000)).

law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Marquard [v. Sec'y for the Dep't of Corr.], 429 F.3d [1278] at 1303 [(2005)]. The phrase "clearly established Federal law," as used in § 2254(d)(1), encompasses only the holdings, as opposed to the dicta, of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d 482 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000)); Osborne v. Terry, 466 F.3d 1298, 1305 (11th Cir. 2006).

Id. at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' § 2254(e)(1)." Schriro, 550 U.S. at 473-74. This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

## VI. Ex Post Facto Law

Article I, Section 10, of the United States Constitution prohibits the States from enacting an ex post facto law. The United States Supreme Court has held that "three critical elements must be present" to establish an Ex Post Facto Clause violation: the statute must be a criminal or penal measure, apply

retrospectively and be "disadvantageous to the offender because it may impose greater punishment." Paschal v. Wainwright, 738 F.2d 1173, 1175-76 (11th Cir. 1984) (citing Weaver v. Graham, 450 U.S. 24, 29 (1981)) (footnote omitted). "A law which is merely procedural and does not add to the quantum of punishment, however, cannot violate the ex post facto clause even if it is applied retrospectively." Dufresne v. Baer, 744 F.2d 1543, 1546 (11th Cir. 1984) (citations omitted), cert. denied, 474 U.S. 817 (1985).

"[T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor . . . on whether an amendment affects a prisoner's 'opportunity to take advantage of the provisions for early release . . . ." California Dept. of Corr. v. Morales, 514 U.S. 499, 506 n.3 (1995) (citation omitted). But rather, the focus is "on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." Id. Thus, the inquiry is whether the use of the 2004 parole laws, in determining Petitioner's PPRD, "created a significant risk of increasing his punishment." Harris v. Hammonds, 217 F.3d 1346, 1349 (11th Cir. 2000) (per curiam) (citing Garner v. Jones, 529 U.S. 244, 255 (2000)); Currie v. David, No. 4:05-cv-287-WS, 2007 WL 1584401, *6-10 (N.D. Fla. May 31, 2007). While there is no exact formula for determining when a particular legislative change produces a sufficient effect on punishment to fall within the prohibition for

the Ex Post Facto Clause, the United States Supreme Court has made clear that the risk of affecting a prisoner's actual term of confinement must be more than "speculative and attenuated." Morales, 514 U.S. at 509 (citations omitted).

## VII. Findings of Fact and Conclusions of Law

Petitioner Gross claims that the FPC's use of 2004 parole laws to establish his PPRD violates the Ex Post Facto Clause. As required by law, Petitioner has exhausted this claim in state court. See Response at 5. Indeed, Petitioner filed a Petition for Writ of Mandamus, seeking to have the circuit court vacate his PPRD and order the FPC to recalculate and establish a new PPRD based on the parole laws in effect at the time of the commission of the crime. See Resp. Ex. H. The court denied the request, concluding "that Petitioner's claims regarding the ex post facto application of parole statu[t]es provide no basis for relief." Resp. Ex. I at 2 (citing Tuff v. State, 732 So.2d 461 (Fla. 3rd DCA 1999) (holding that Fla. Stat. § 947.174 (1997), which changed subsequent parole hearings for certain prisoners from every two years to every five years, is not violative of the Ex Post Facto Clause since the statute applies to few prisoners and has appropriate safeguards), rev. denied, 763 So.2d 1046 (Fla. 2000) and Damiano v. Florida Parole & Probation Comm'n, 785 F.2d 929 (11th Cir. 1986) (finding that petitioner's ex post facto claim was "without support" since such a claim is "proper only when subsequent legislation imposes

more onerous or disadvantageous punishment")). Thereafter, Petitioner filed a Petition for Writ of Certiorari in the appellate court, see Resp. Ex. J; the FPC filed a response, see Resp. Ex. K, and the appellate court denied the petition per curiam, without issuing a written opinion, see Resp. Ex. L.

Accordingly, this ex post facto claim was rejected on the merits by the state trial and appellate courts. As there are qualifying state court decisions, this Court applies the deferential standard for federal court review of state court adjudications required by AEDPA. Upon a thorough review of the record and the applicable law, the Court finds that Petitioner is not entitled to relief because the state courts' adjudications of his claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court similarly concludes that Petitioner's claim is without merit. Petitioner Gross states that the parole examiner and the FPC made their computations to establish his PPRD based on the parole laws, policies and procedures (including the objective parole criteria, salient factor score, offense severity rating and matrix time range) in effect in 2004 instead of the more lenient parole laws, policies and procedures in effect when he committed

the first degree murder (January 10, 1981).[5]  In response, the FPC contends that a comparison of the pre-1981 Florida statutes and the 2004 statutes shows few additions and/or changes that would negatively impact Petitioner Gross.  See 3rd Supp. Response at 2.  It further contends that comparing the changes made in Florida Statutes sections 947.165, 947.002, 947.06, 947.16, 947.16(6) and 947.173(1) supports its contention.  Id.  In sum, Respondent argues that "[t]he 2004 statutes were better defined, but not necessarily more onerous."  Id. at 9.  The Court will consider each of the challenged changes to the statute in turn.

First, Petitioner challenges the change in the Legislature's stated intent and its negative impact upon him.  Specifically, he contends that "[i]f the Legislature [in 2004] declared that parole 'shall not be considered a right[,]' then prior to 1982 the converse must be true, there had to have been some right to parole, or at the very least, 'proper consideration for parole.'"  2nd Supp. Reply at 4 (citing Moore v. Florida Parole & Probation Comm'n, 289 So.2d 719, 720 (Fla. 1974) ("While there is no absolute right to parole, there is a right to a proper consideration for parole."), cert. denied, 417 U.S. 935 (1974)).

---

[5] The parties have submitted the 1979 and the 2004 statutes, the 1979 and 2004 parole guidelines worksheets and the applicable administrative rules.  See 3rd Resp. Supp. Ex. A, Fla. Stat. §§ 947.001-947.26 (1979); 2nd Resp. Supp. Exs. A, B, C, D; Supp. Reply, Pet. Exs. A, B; Resp. Ex. E.

In 1979, Florida Statutes section 947.002(1), entitled "Intent," stated:

> The present system lacks objective criteria for paroling and, thus, is subject to allegations of arbitrary and capricious release and, therefore, potential abuses. It is the intent of this act to establish an objective means for determining and establishing parole dates for inmates.

In 2004, the Legislature's intent was further defined in section 947.002(5), which reads:

> It is the intent of the Legislature that the decision to parole an inmate from the incarceration portion of the inmate's sentence is an act of grace of the state and shall not be considered a right.

While such a legislative clarification in 2004 may have been beneficial guidance, the Legislature's intention, in 1979, that parole not be considered a right was definitive, as reflected in Florida Statutes section 947.18, which provides in pertinent part:

> No person shall be placed on parole merely as a reward for good conduct or efficient performance of duties assigned in prison. No person shall be placed on parole until and unless the commission shall find that there is reasonable probability that, if he is placed on parole, he will live and conduct himself as a respectable and law-abiding person and that his release will be compatible with his own welfare and the welfare of society.

Fla. Stat. § 947.18 (1979). Indeed, interpreting this language from the statute as it read in 1979, the Florida Supreme Court determined that Florida Statutes section 947.18 "allow[ed] the

commission a repository of discretion in the ultimate parole decision." May v. Florida Parole & Probation Comm'n, 435 So.2d 834, 837 n.7 (Fla. 1983). Moreover, section 947.18 contains the very language that courts have relied upon in determining legislative intent with regard to the question of whether parole is a right or an act of grace. See Damiano, 785 F.2d at 931 (noting that, in 1974, "Florida law considered parole to be wholly a matter of discretion exercised by the Parole Commission") (citing Fla. Stat. § 947.17-18 (1973)); Cochran v. State, 476 So.2d 207, 208 (Fla. 1985) ("In reality, however, parole is a matter of legislative grace.").

Contrary to Petitioner's contention, neither in 1979 nor in 2004 was there a constitutional right to parole in Florida. Rather, at both times "[t]he decision if and when to parole an inmate [was] left to the discretion of the Commission guided by its own administrative rules." Jonas v. Wainwright, 779 F.2d 1576, 1577 (11th Cir. 1986), cert. denied, 479 U.S. 830 (1986) (citing Hunter v. Florida Parole & Probation Comm'n, 674 F.2d 847, 848 (11th Cir. 1982); Moore, 289 So.2d 719; Fla. Stat. § 947.18). Indeed, Petitioner Gross "acknowledges the fact that parole is a matter of grace bestowed by the Florida Legislature, and administered by the Florida Parole Commission." See 2nd Supp. Reply at 3. Thus, any claim by Petitioner that subsequent changes

in the wording of the Legislature's intent negatively impacted him is without merit.

Petitioner also claims that substantive "changes in the Florida parole laws that show an increased concern for community safety and the participation of crime victims in parole meetings" [. . .] have severely disadvantaged him." 2nd Supp. Reply at 8 (citing Fla. Stat. § 947.06 (2004)); Supp. Reply at 7. As early as 1979, the FPC meetings in which parole decisions are made have been considered open to the public. The 1979 version of Florida Statutes section 947.06, entitled, "Meeting; when commission may act," states: "All matters relating to the granting, denying, or revoking of parole shall be decided in a meeting at which the public shall have the right to be present." However, individuals (who were not members or employees of the commission) interested in participating in the deliberations concerning the granting and revoking of parole were permitted to participate "only upon the prior written approval of the chairman of the commission." Fla. Stat. § 947.06 (1979).

In 2004, the content, as described above, remained the same in section 947.06; however, after 1979, the statute was amended to read in pertinent part:

> Victims of the crime committed by the inmate
> shall be permitted to make an oral statement
> or submit a written statement regarding their
> views as to the granting, denying, or revoking
> of parole. Persons not members or employees
> of the commission or victims of the crime

> committed by the inmate may be permitted to
> participate in deliberations concerning the
> granting and revoking of paroles only upon the
> prior written approval of the chair of the
> commission.  To facilitate the ability of
> victims and other persons to attend commission
> meetings, the commission shall meet in various
> counties . . . .

While the 2004 statute gives a victim a right to participate in the deliberations and make oral statements without the requirement of prior written approval, the 1979 statute did not prohibit or otherwise prevent the victims' participation.  A victim of the crime committed by an inmate had the opportunity to participate under the 1979 statute.  The later enacted statute merely enhanced the victims' rights by simplifying the process for participation in order to "facilitate the ability of victims and other persons to attend commission meetings[.]"  Fla. Stat. § 947.06 (2004). Petitioner fails to demonstrate how simplification of the process for the participation of crime victims in the parole meetings presents a change in law that would severely disadvantage him.

Further, Petitioner claims that the parole guidelines scoresheet and the initial parole interview procedure in effect on January 10, 1981 (when he committed the first degree murder for which he was convicted) "was entirely different than the [p]arole guidelines scoresheet and the parole system in effect when his initial parole interview was conducted in 2004."  See Supp. Reply at 4.  In the 1979 version of the statute, section 947.16 is entitled, "Eligibility for parole; powers and duties of

commission," <u>see</u> Fla. Stat. § 947.16 (1979), while in the 2004 version, the section title is expanded and reads, "Eligibility for parole; initial parole interviews; powers and duties of commission." <u>See</u> Fla. Stat. § 947.16 (2004). Additionally, under the 1979 statute, initial parole interviews were scheduled as follows:

> An inmate who has been sentenced for an indeterminate term or a term of 5 years or less shall have an initial interview conducted by a hearing examiner panel within 6 months after the initial date of confinement in execution of the judgment. An inmate who has been sentenced for a minimum term in excess of 5 years shall have an initial interview conducted by a hearing examiner panel within 1 year after the initial date of confinement in execution of the judgment. **An inmate convicted of a capital crime shall be interviewed at the discretion of the commission.**

Fla. Stat. § 947.16(1) (1979) (emphasis added). This section continued by defining when an initial hearing could be postponed, how to consider issues of retained judicial jurisdiction and the requirement to advise the inmate of the presumptive parole release date forty-five days after the initial interview. The 2004 statute applied to Petitioner provides for the following initial parole interview schedule:

> An inmate who has been sentenced for an indeterminate term or a term of 3 years or less shall have an initial interview conducted by a hearing examiner within 8 months after the initial date of confinement in execution of the judgment.

An inmate who has been sentenced for a minimum term in excess of 3 years but of less than 6 years shall have an initial interview conducted by a hearing examiner within 14 months after the initial date of confinement in execution of the judgment.

An inmate who has been sentenced for a minimum term of 6 or more years but other than for a life term shall have an initial interview conducted by a hearing examiner within 24 months after the initial date of confinement in execution of the judgment.

An inmate who has been sentenced for a term of life shall have an initial interview conducted by a hearing examiner within 5 years after the initial date of confinement in execution of the judgment.

An inmate who has been convicted and sentence under ss. 958.011-958.15, or any other inmate who has been determined by the department to be a youthful offender, shall be interviewed by a parole examiner within 8 months after the initial date of confinement in execution of the judgment.

Fla. Stat. § 947.16(1) (2004). The statute also sets forth reasons and methods for postponement of the initial interview, discusses the implications of concurrent and consecutive sentences, gives instructions in cases of retained jurisdiction and allows the notice to be sent to the inmate within ninety days after the initial interview. The statute as revised is very specific regarding the timing of initial interviews and allowed for very little discretion of the Commission in determining initial interview dates.

The 2004 statute also provides for a schedule of initial parole interviews in "special types of cases." Fla. Stat. § 947.16(2) (2004). The statute states in pertinent part:

> The commission shall conduct an initial interview for an inmate serving a mandatory minimum sentence according to the following schedule:
>
> . . . .
>
> 3. An inmate serving a mandatory term of 15 years or more shall have an initial interview no sooner than 18 months prior to the expiration of the mandatory minimum portion of the sentence.

Fla. Stat. § 947.16(2)(g) (2004).

Petitioner Gross asserts that the changes reflected in Florida Statutes section 947.16 (2004) should not have applied to him because he was convicted prior to its April 20, 1982, effective date. See Reply at 2-4; 2nd Supp. Reply at 9-10; see also Fla. Stat. § 947.16(6) (2004) ("This section as amended by chapter 82-171, Laws of Florida, shall apply only to those persons convicted on or after the effective date of chapter 82-171; and this section as in effect before being amended by chapter 82-171 shall apply to any person convicted before the effective date of chapter 82-171."). However, Petitioner fails to explain how these changes in the procedure for scheduling interviews acted to his detriment. Indeed, as urged by Respondent FPC, Petitioner appears to have benefitted from the change in the statute. See 2nd Supp. Response at 7. In 1979, the Commission had the authority to conduct a

parole interview for an inmate convicted of a capital crime at its own discretion, see Fla. Stat. § 947.16(1) (1979); however, with the changes reflected in the 2004 statute, the Commission was required to conduct the initial parole interview at a time certain (within the last eighteen months before the expiration of the mandatory portion of the sentence).[6]  This change did not make Petitioner ineligible for consideration for parole nor did it make it more difficult for him (an inmate sentenced to a term of life imprisonment with a mandatory minimum of twenty-five years for first degree murder) to be considered for parole or change his original sentence in any way.  In sum, the Court fails to see how the changes to section 947.16(1) "created a significant risk of increasing" Petitioner's sentence.

Next, Petitioner argues that two additions to Florida Statutes section 947.165 "have disadvantaged petitioner and have in fact created an increase in petitioner's punishment."  2nd Supp. Reply

---

[6] On December 16, 1981, Petitioner was convicted of first degree murder and sentenced to a term of life imprisonment with a twenty-five year mandatory minimum term before being eligible for parole, see Resp. Ex. B, and Petitioner's initial parole interview was on August 26, 2004, see Resp. Ex. D.  The August 26, 2004, initial parole interview date met the requirement of the statute. Adding twenty-five years for the mandatory portion of the sentence would give a December 16, 2006, date.  Further, subtracting the 335 days of jail time credit (see Resp. Ex. E) would result in a January 15, 2006, date.  And, finally, adding in any time that he was out on escape and then subtracting the eighteen months would result in the initial interview date meeting the requirements of the statute.

at 4. Entitled, "Objective parole criteria," this section of the 2004 statute states:

> The commission shall develop and implement objective parole guidelines which shall be the criteria upon which parole decisions are made. The objective parole guidelines shall be developed according to an acceptable research method and shall be based on the seriousness of offense and the likelihood of favorable parole outcome. **The guidelines shall require the commission to aggravate or aggregate each consecutive sentence in establishing the presumptive parole release date.** Factors used in arriving at the salient factor score and the severity of offense behavior category shall not be applied as aggravating circumstances. **If the sentencing judge files a written objection to the parole release of an inmate as provided for in s. 947.1745(6), such objection may be used by the commission as a basis to extend the presumptive parole release date.**

Fla. Stat. § 947.165(1) (2004) (emphasis added). Petitioner asserts that the emphasized portions of the statute, as noted above, are the additions that have disadvantaged him.

With respect to the aggregation and aggravation provision, Respondent FPC contends that the 1979 objective parole guidelines statute is essentially the same as the 2004 statute. See 3rd Supp. Response at 2. Both statutes require the Commission to consider the seriousness of the offense and the likelihood of a favorable parole outcome. Further, both statutes emphasize that the Commission must not aggravate with factors used in the salient factor score or in the severity of offense category. All of the

19

aggravation factors applied to Petitioner in 2004 would have been permissible under the 1979 statute. See 2nd Supp. Response at 3. See 2nd Supp. Response at 3 (citing 2nd Resp. Supp. Ex. B at 55-59); 3rd Supp. Response at 2-3;; Fla. Stat. § 947.002(2) (1979) ("Objective parole criteria will be designed to give primary weight to the seriousness of the offender's present criminal offense and his past criminal record."). Thus, the addition in the 2004 statute ("The guidelines shall require the commission to aggravate or aggregate each consecutive sentence in establishing the presumptive parole release date.") merely reinforced the Commission's practices and procedures to ensure that the inmate's entire criminal history is taken into account in making parole determinations. See 3rd Supp. Response at 3.

The other difference between the 1979 and 2004 statutes is the addition of the sentence allowing an extension of the presumptive parole release date based upon the filing of a judicial objection. Fla. Stat. § 947.165(1) (2004) (emphasis added) ("If the sentencing judge files a written objection to the parole release of an inmate as provided for in s. 947.1745(6), such objection **may be** used by the commission as a basis to extend the presumptive parole release date."). The addition of this sentence merely clarified the previous statute and the Legislature's intent. Indeed, the 1979 statute did not prevent the FPC from extending an inmate's PPRD due to the receipt of a judicial objection. To the contrary, a

judicial objection could have resulted in a stay or extension of an inmate's PPRD under various provisions of the 1979 statute.  For example, in the 1979 version of section 947.16(3), any impending release on parole could be stayed based on court order.  Likewise, pursuant to section 947.16(4), a PPRD could be changed based on "the acquisition of new information not available at the time of the initial interview[,]" (which could certainly include an objection raised by the sentencing judge).  Further, the 1979 version of section 947.173(3) allows for a modification of the PPRD "for good cause in exceptional circumstances[,]" which also could have been established by a judicial objection.  Thus, "the amended sections 947.165(1) and 947.1745(4)[7] represent a mere procedural change in or enlargement of the manner by which the Commission may exercise its discretion."  Gattis v. Florida Parole & Probation Comm'n, 535 So.2d 640, 642 (Fla. 1st DCA 1988), rev. denied, 542 So.2d 1333 (Fla. 1989).

Petitioner also contends that the 2004 version of Florida Statutes section 947.173(1) is more onerous and works to his disadvantage because it has been amended to allow only one review

---

[7] In 1986, finding a sentencing judge's objection important to the review of an inmate's PPRD, the Legislature amended section 947.1745 to specifically enumerate it as a factor to be considered in setting a PPRD.  The statute was further amended and codified as section 947.1745(6).  See Gaines v. Florida Parole Comm'n, 743 So.2d 118, 119 (Fla. 4th DCA 1999).

of the determination of the PPRD. See 2nd Supp. Reply at 8.

Florida Statutes section 947.173(1) (1979) provides:

> An inmate may request review of his presumptive parole release date by the commission if the inmate shows cause in writing, with individual particularities, within 60 days after the date of the decision on the presumptive parole release date.

The 2004 statute states:

> An inmate may request **one review** of his or her **initial** presumptive parole release date established according to s. 947.16(1) if the inmate shows cause in writing, with individual particularities, within 60 days **after the date the inmate is notified of the decision on the presumptive parole release date**.

Fla. Stat. § 947.173(1) (2004) (emphasis added).

Respondent points out that in 1979 the Commission was not required to consider more than one request for review. See 3rd Supp. Response at 8. Both statutes provide that a petitioner is entitled to review of the determination of the initial PPRD. The language limiting an inmate to one review of his PPRD simply does not create a risk of increasing his punishment. Rather, the 2004 statute merely clarifies the procedure for seeking review of a PPRD.[8] See Dobbert v. Florida, 432 U.S. 282, 293 (1977) ("Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto."), reh. denied, 434 U.S. 882 (1977).

---

[8] Interestingly, the 2004 statute, which permits an appeal be made within sixty days after the date the inmate is notified of the decision rather than within sixty days after the date of the decision, appears to be more advantageous to Petitioner.

Petitioner next contends that Florida Statutes section 947.1745, entitled "Establishment of effective parole release date," is disadvantageous to him. 2nd Supp. Reply at 4. This subsection states:

> Within 90 days before the effective parole release date interview, the commission shall send written notice to the sentencing judge of any inmate who has been scheduled for an **effective parole release date interview.**
>
> . . . .
>
> Within 30 days after receipt of the commission's notice, the sentencing judge, or the designee, shall send to the commission notice of objection to parole release, if the judge objects to such release. If there is objection by the judge, **such objection may constitute good cause in exceptional circumstances** as described in s. 947.173, and the commission may schedule a subsequent review . . . .

Fla. Stat. § 947.1745(6) (2004) (emphasis added). In the state court proceedings, Respondent FPC argued that Petitioner "overlooks the fact that [§] 947.1745 applies only to establishment of an effective parole release date (EPRD), which occurs only when the inmate reaches his PPRD, [which] in this case . . . will not happen until January 15, 2086." Resp. Ex. K, FPC's Response to Court's Order to Show Cause at 15. Further, Respondent claims that Petitioner has failed to demonstrate that the revision to this section subjected him to harsher punishment. Id. at 16.

The Fourth District Court of Appeal has concluded that the application of Florida Statutes section 947.1745(6) to a prisoner

23

sentenced before its enactment does not constitute an _ex post facto_ violation, explaining, in pertinent part:

> Applying the three-prong test identified in _Paschal_ [_v. Wainwright_, 738 F.2d 1173 (11th Cir. 1984)] and _Weaver_ [_v. Graham_, 450 U.S. 24 (1981)] we find that section 947.1745(6), as applied to Gaines, is retroactive, and penal (i.e., criminal rather than civil), but not disadvantageous as that test is employed in the case law. Although the sentencing judge or a designated substitute judge can negatively influence Gaines' chances for parole, both under the old parole system and the one now being applied to Gaines, the Parole Commission ultimately retains the discretion to grant parole despite a judge's objection. Gaines has no guaranteed right to release at a certain time, based on a certain formula, unlike _Weaver_ and _Williams_ [_v. Florida Parole Comm'n_, 625 So.2d 926 (Fla. 1st DCA 1993)]. Additionally, section 947.1745(6), like the death penalty statute at issue in _Dobbert_ [_v. Florida_, 432 U.S. 282 (1977)], is procedural rather than punitive, as it merely altered the methods employed to determine whether the inmate should be paroled.

> In conclusion, even though section 947.1745(6) may work to Gaines' disadvantage by placing a _potential_ additional obstacle in his path to parole, the statute is procedural rather than punitive, because the judge's objection does not foreclose parole; the Parole Commission still retains the discretion to set an effective parole release date. _See_ § 947.1745(6) (objection by judge "_may_ constitute good cause in exceptional circumstances" to extend the presumptive parole release date) (emphasis added); _Dobbert_, 432 U.S. at 293, 97 S.Ct. at 2298 ("[e]ven though it may work to the disadvantage of a defendant, a procedural change is not _ex post facto_."). Additionally, the statutory change in Florida's parole system does not clearly or automatically

disadvantage Gaines. <u>See</u> <u>May</u>, 435 So.2d at 837.

<u>Gaines v. Florida Parole Comm'n</u>, 743 So.2d 118, 121-22 (Fla. 4th DCA 1999); <u>see</u> <u>Gattis</u>, 535 So.2d at 642; <u>Craft v. David</u>, No. 4:06-cv-00424-MP-WCS, 2008 WL 681031, at *4 (N.D. Fla. Mar. 6, 2008) ("Florida courts have considered the constitutionality of the judicial objection provision and have upheld it."). The statutory change at issue relates to a procedure employed in making parole determinations; the procedure does not alter or add to the punishment imposed for Petitioner's crime. Rather, it simply provides more information to the FPC so that an informed and reasoned decision can be made with respect to parole eligibility. As the FPC retains its discretion to set an inmate's PPRD and EPRD, the statutory change and use of a judicial objection provision does not create a significant risk of increasing his original punishment.

Petitioner next asserts that the parole examiner and the FPC made their computations to establish his PPRD based on the objective parole criteria (salient factor score, severity of offense behavior rating and the matrix time range) in effect in 2004 instead of the more lenient objective parole criteria in effect when he committed the offense. In <u>Baker v. Florida Parole & Probation Comm'n</u>, 384 So.2d 746, 747 (Fla. 1st DCA 1982) (per curiam), the court explained the procedure for establishing a PPRD:

The Objective Parole Criteria used to determine a presumptive release date is basically a two-part system. The first part consists of fairly routine calculations. The inmate's prior history of crime or terms in prison (prison criminal history) are converted to a numerical value or "salient factor score." Rule 23-19.04, Florida Administrative Code. This score is then charted against the type of crime for which the inmate was most recently sentenced, termed the "offense characteristic," Rule 23-19.01, to arrive at a matrix range, Rule 23-19.05. A hearing examiner panel of the Commission recommends a time within this range. The establishment of a date within this range allows for relatively little discretion. The only discretion that should be exercised occurs in the determination of where within the limited range the prisoner's release date will fall. The second part of the Objective Parole Criteria primarily concerns decisions beyond the matrix range. The Florida Statutes and the Commission rules allow the Commission, upon proper showing of "good cause," to go outside the calculated guidelines and extend an inmate's term by reason of aggravating circumstances far beyond the length of time his salient factor score and offense characteristic rating indicate he should serve.

The FPC established Petitioner's PPRD to be January 15, 2086. Resp. Ex. E. Petitioner's criminal history was converted to a numerical value or salient factor score of nine (9). The salient factor score, which falls in the range of 8-11, was then charted against the severity of the crime (first degree murder). Id. The matrix time range (300-9998 months) is where the salient factor score of nine (9) intersects with the severity of offense behavior (Level 6; capital felony; statutory sentence to life). Id.

Petitioner argues that the hearing examiner calculated a salient factor score of eight (8) based on Petitioner's age (on the date of the offense which led to the first incarceration) being seventeen years old rather than eighteen. See Resp. Ex. D; see also Resp. Ex. A, Presentence Investigation (reflecting the arrest date of the offense which led to the first incarceration as April 16, 1972, and Petitioner's date of birth as May 17, 1954). However, as Petitioner acknowledged in state court, the issue of whether the salient factor score is eight or nine is irrelevant since the salient factor score range is 8-11. See Resp. Ex. F at 3-4.

Petitioner also asserts that the matrix time range changed from 1979 to 2004. See 2nd Supp. Reply at 6. While the matrix did change, the modifications did not subject Petitioner to enhanced punishment. Based on the 1979 parole guidelines worksheet submitted by Petitioner, see Supp. Reply, Pet. Ex. A, the matrix time range applicable to him was 288-life.[9] In 2004, the matrix time range applicable to Petitioner was 300-9998 months. See Resp. Ex. E. Thus, the FPC's determination of 600 months for the scored offense was "an acceptable time" within either the 1979 matrix time range (288-life) or the 2004 matrix time range (300-9998). See 2nd Supp. Response at 4 (citing Resp. Ex. E).

---

[9] Respondent FPC agrees the matrix time range applicable to Petitioner in 1979 would have been 288-life. See 2nd Supp. Response at 2; 2nd Resp. Supp. Ex. B at 72.

Petitioner further challenges the second aggravating circumstance applied by the FPC, specifically the addition of ten years for the consecutive fifteen-year escape sentence. <u>See</u> 2nd Supp. Reply at 5. After the August 26, 2004, initial parole interview, the Florida parole examiner recommended a June 29, 2023, PPRD (which included time for the consecutive fifteen-year sentence for the escape in Case No. 81-528). Resp. Ex. D. Specifically, the parole examiner stated:

> Subject was scored on the capital felony of Murder in the First Degree, Case #81-289. The matrix time range for this offense is 300-9998 months based on a salient factor score of 8. 450 months is recommended for the scored offense and 60 months aggravation for the multiple separate offense of Escape, Count 1, Case #81-528, 15 years DOC, consecutive to the scored offense [for a total of 510 months].

<u>Id</u>. Thereafter, on October 8, 2004, as a result of the parole commission meeting held on September 29, 2004, the FPC established Petitioner's PPRD to be January 15, 2086 (600 months for the scored offense and 660 months for the aggravation, totaling 1260 months). Resp. Ex. E.

In 1979, pursuant to Florida Statutes sections 947.165 and 947.172, the FPC could consider competent evidence relevant to aggravating circumstances. Both the 1979 and the 2004 statutes state:

> Factors used in arriving at the salient factor score and the severity of offense behavior category shall not be applied as aggravating circumstances.

Fla. Stat. § 947.165(1) (1979); Fla. Stat. § 947.165(1) (2004). The only substantive differences between the 1979 and the 2004 lists of factors used in determining an inmate's salient factor score is the addition of "probation" revocation in subsection five and the inclusion of "breaking and entering" in addition to burglary as the offense of conviction in subsection seven. <u>See</u> 2nd Resp. Supp. Ex. B, Fla. Admin. Code, Rule 23-19.04, "Salient Factor Scoring," at 60-68; Resp. Ex. E; 2nd Resp. Supp. Ex. D, Fla. Admin. Code, Rule 23-21.007, "Salient Factor Scoring," at 39-41.

When the FPC determined Petitioner's PPRD in 2004, the factors used in arriving at the salient factor score of nine, <u>see</u> Resp. Ex. E, were not applied as aggravating circumstances. Moreover, Respondent correctly states that all of the aggravation factors applied under the 2004 statute would have been appropriate under the 1979 statute. <u>See</u> 2nd Supp. Response at 3. Indeed, while Petitioner objects to the 120 months aggravation, the Court notes that this period of time results from a finding of aggravation based upon the "[m]ultiple separate offense" of escape. Resp. Ex. E. Aggravation for "multiple separate offenses" was permissible under the 1979 statute as well as the 2004 statute. <u>See</u> 2nd Resp. Supp. Ex. B, Fla. Admin. Code, Rule 23-19.03(1)(a)(8) at 56 ("The offense involved a pattern of on-going criminal behavior and multiple separate offenses."); 2nd Resp. Supp. Ex. D, Fla. Admin. Code, Rule 23-21.010(5)(a)1.h. at 43 ("The offense involved

multiple separate offenses."). As previously noted, the FPC's determination of 600 months for the scored offense was lawfully within the range of either the 1979 matrix time (288-life) or the 2004 matrix time (300-9998). <u>See</u> 2nd Supp. Response at 4 (citing Resp. Ex. E). Even with the additional 660 months for the aggravation, Petitioner's PPRD remains within the matrix range. Moreover, the factors of aggravation applied were not used in arriving at his salient factor score.

In sum, there is no support in the record for Petitioner's contention that the use of the 2004 statutes created a significant risk of increasing his punishment of life imprisonment. The challenged 2004 statutes clarified and defined the parole decision process; however, the use of those statutes did not create a significant risk of increasing Petitioner's punishment. Petitioner has not offered sufficient evidence to show any risk of increasing his original punishment of life in prison and discretionary parole. For these reasons, he is not entitled to federal habeas corpus relief.

Any claims not specifically addressed are found to be without merit.[10]  Accordingly, for the above-stated reasons, the Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this 25th day of September, 2009.

MARCIA MORALES HOWARD
United States District Judge

sc 9/25
c:
Phillip C. Gross
Counsel of Record

---

[10] With respect to the Florida Statutes section 947.174 (2004), entitled "Subsequent interviews," Petitioner Gross states that "the new 5-year reinterview date is not part of [his] claim advanced in his petition . . . ."  Supp. Reply at 7.  However, even assuming Petitioner intends to raise the argument, the claim is without merit.  See Supp. Response; Penoyer v. Briggs, 206 Fed. Appx. 962, 965-67 (11th Cir. 2006) (not selected for publication in the Federal Reporter).

31